HELON B. ACKERMAN, RESPONDENT, *v.* CHARLES B. REDFIELD, APPELLANT.

*Intermediate consignee of goods — when liable for freight and charges.*

Although the consignee is *prima facie* the owner of goods consigned to him, and as such is liable for the freight and charges thereon, yet the mere receipt of goods by one not the owner thereof — *e. g.*, the intermediate consignee — with knowledge that they are subject to a charge for freight, does not render such person liable therefor, where the master of the vessel knows that such person is not the owner.

Such liability is only incurred when the goods are received in pursuance of a bill of lading, making the payment of the freight a condition precedent to the delivery, or when he is notified by the master that if he takes the goods he must take them subject to the charges.

*Dart* v. *Ensign* (47 N. Y., 619) followed.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee, in an action brought to recover the freight on a canal boat load of flour, delivered by plaintiff by the direction of the defendant on board of a barge at Albany.

*Stephen K. Williams*, for the appellant. The defendant was intermediate consignee or agent of Fish, Ellison & Co. to tranship the flour at Albany, and to see to collection of freight for said firm, and was under no obligation to pay plaintiff his freight. (Abbott on Shipping, 414, 415, 416, 421, 423; Adds. on Cont., 486; *Coleman* v. *Lambert*, 5 Mees. & Wels., 502; *Scarf* v. *Tobin*, 3 B. & Ad., 523; *Dart* v. *Ensign*, 47 N. H., 619.) The plaintiff knew that defendant was mere agent, not owner, of the flour, and was

not liable for the freight, under the circumstances of this case. (*Amos* v. *Temperly*, 8 Mees. & Wels., 798; *Davis* v. *Pattison*, 24 N. Y., 317: *McAndrew* v. *Whitlock*, 52 id., 40.)

*J. Vandenberg*, for the respondent.

TALCOTT, J.:

This is an appeal from a judgment rendered on the report of a referee.

The action is to recover the freight on a canal boat load of flour delivered on board of a barge at Albany, by the direction of the defendant. The plaintiff was master and owner of the canal boat Julia Krapp, and as such received the said cargo of flour on board his canal boat at Rochester, in July, 1864, and went to Albany under what is termed a skeleton bill of lading, which he proved and relied upon. This bill of lading consigned the cargo, 1,770 barrels of flour, to the defendant at Albany, and was as follows:

"ROCHESTER, *July* 19, 1864.

"Shipped, by R. T. Co., on board boat Julia Krapp, Captain ——, the following property, in apparent good order.

"Marks and owners.

"C. B. Redfield, Albany, N. Y., 1,770 bbls. Flour,          378,780

"FISH, ELLISON & Co.    AYRES."

Fish, Ellison & Company were commission merchants at Rochester; Redfield the defendant, was a member of the firm of C. B. Redfield & Company, engaged in transportation by barges on the Hudson river, between Albany and New York.

Before leaving Rochester, the plaintiff had signed a bill of lading in a book kept by Fish, Ellison & Company, which was in substance as follows:

"Boat Julia Krapp, July 19, 1864.

"Acc't.

"H. M. Kinne, 1,770 bbls flour, 70,   .  -         -         $1,239 00

"Care J. M. Fiske & Co., N. Y. 'Maxwells.'

"Back charges to Whitney.

177 00
————
$1,062 00

[Here followed a memorandum of various charges, consisting of cash, tolls, insurance, hoisting, lumber and commission.]       " Redfield & Co.

Advance Capt.

for expenses up.

" Received the above in good order to be delivered as consigned.

(Signed)    " H. B. ACKERMAN."

Redfield, it will be seen, is not named at all as a consignee in the bill of lading signed by the plaintiff, otherwise than may be inferred from the direction, " Redfield & Co. Advance Capt. for expenses up." The plaintiff states that he received the flour in the first instance to carry to New York, and some negotiation was afterwards had, by which it was arranged that he was to leave the flour at Albany; and what is termed the skeleton bill of lading was afterwards made out. The owner of the flour was H. M. Kinne; and George J. Whitney, of Rochester, from whose warehouse the flour was taken, when laden on board the canal boat, claimed a lien on it of ten cents per barrel, $177 in all, for manufacturing the flour from wheat.

When the plaintiff took the wheat from Whitney's warehouse he signed another paper, as follows:

" ROCHESTER, *July* 19, 1864.

"Received of George J. Whitney, on board boat Julia Krapp, of ——, in good order, the following articles, viz.:

" Acc't J. H. Pool & Co. (care J. M. Fiske & Co.).

" Maxiwell 1770, which property as above specified the said captain agrees to deliver in like order and without delay as above consigned.     " H. B. ACKERMAN."

A memorandum or shipping bill was also sent by Fish, Ellison & Co. to Redfield & Co., in which the flour was stated to be shipped for the account of H. M. Kinne, care of J. M. Fiske & Co., New York, who were the only persons named as consignees, but also containing the direction, " Redfield & Co., advance Capt. for expenses up." The most that can be affirmed of Redfield, the defendant, or Redfield & Co., is that he or they were intermediate consignees of Fish, Ellison and Co., empowered to receive and

take charge of the flour at Albany, and see to the shipping of the same thence to New York to the ultimate consignees, without any direction to pay the freight or charges, any further than was embraced in the direction to advance the captain of the canal boat money for his expenses back to Rochester.

The consignee is *prima facie* the owner of the goods, and as such liable for the freight; but if he be not, in fact, the owner, he is not liable for the freight, *simpliciter* as consignee, but only upon a contract express or implied, to pay the freight. It is not the mere receipt of goods by a person who is not the owner, with the knowledge that they are subject to a charge for freight, that will bind him to pay it; but if he receive the goods in pursuance of a bill of lading, making the payment of the freight a condition precedent to the delivery, or if he has notice from the master that if he takes the goods he must take them subject to the charge, he will be liable to pay it. But a person who is only agent for the consignor, and who is known to the master to be acting in that character, does not make himself personally answerable for the freight by receiving the goods. (See Abbott on Shipping, 421, 422; *Coleman* v. *Lambert*, 5 M. & W., 502; *Scaife* v. *Tobin*, 3 Barn. & Adol., 523; *Ward* v. *Felton*, 1 East, 507; *Amos* v. *Temperly*, 8 M. & W., 798; Addison on Contracts [6th ed.], 457; 1 Parsons on Mar. Law, 220.)

These principles have been fully recognized and enforced by the Court of Appeals in *Dart* v. *Ensign* (47 N. Y., 619), in which case the decision of the court below (2 Lans., 383), that a liability for the freight arose from the acceptance of the goods was reversed, and it was held that in the absence of a stipulation or condition in a contract for transportation, by which an intermediate consignee is to pay the freight, such consignee is not liable for the freight of goods sent to, or received by him in the course of transit, to forward the same to the ultimate consignee, when the agency is known to the carrier at the time of the delivery of the goods, and he delivers without making any claim for back freight or giving notice that any claim existed on his part; and that no promise by an intermediate consignee will be implied from a bill of lading, consigning the goods to the care of such intermediate consignee for the owner. Agents have been held personally liable to pay the

freight on goods consigned to them, on the ground that, by the terms of the bill of lading as usually drawn, the consignee is to pay the freight. The language usually employed in a bill of lading for this purpose is, "he or they paying freight for the same;" and whoever accepts a delivery under such a bill of lading contracts, by implication, to pay the freight chargeable upon the property so received.

The referee in this case has found that the freight was to be collected of "said consignee," meaning the defendant. We find no evidence in the case that this was so. On the other hand, so far as there was any evidence on the subject, it tends to show that the freight was to be settled with and paid by Fish, Ellison & Co., at Rochester.

The referee also finds that the defendant accepted and received the flour, "agreeing to pay the freight thereon, or so much thereof as had not been paid." We find no evidence of any such agreement. The plaintiff does not claim that any such express agreement was made ; and the various conversations testified to by him do not contain any such agreement. On the other hand, the defendant states that he expressly informed the plaintiff at the time of the delivery that he had no authority to make him any advances, except what should be necessary for expenses back to Rochester. We assume, therefore, that the referee held, as the Supreme Court had held in *Dart* v. *Ensign*, that the receipt of the property, of itself, was evidence of an agreement to pay the freight.

The plaintiff knew that Redfield did not claim to be the owner of the flour; he had signed two different instruments, in which it was stated that the ultimate consignee was at New York. None of these bills of lading or shipping bills, either that signed at the warehouse of Whitney in the book of Fish, Ellison & Co., or that which the captain had, and under which he claimed affixed the condition of payment of the freight to the delivery to Redfield, or Redfield & Co., or indicated that he or they were to pay the freight on the property as far as Albany. Redfield & Co. were requested or directed only to advance the captain for his expenses up, which is inconsistent with the idea that they were expected to pay him his full freight. This advance Redfield & Co. made; and we think

it clear, upon the principles laid down by the Court of Appeals in *Dart* v. *Ensign* (*supra*), that the defendant was not personally liable, at most, for any amount beyond sufficient with what he had already received from Fish, Ellison & Co., to pay the expenses of the plaintiff and his boat back to Rochester; and this was paid him. The judgment is, therefore, erroneous.

Judgment reversed, and to be referred to a new referee, costs to abide the event.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Ordered accordingly.